United States District Court
Southern District of Texas
**ENTERED**
October 19, 2018
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN RICARDO HERNANDEZ, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 1:17-cv-093 |
| | § | |
| UNITED STATES OF AMERICA | § | |
| Respondent. | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Before the Court is Petitioner Juan Ricardo Hernandez's "Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (hereinafter, Hernandez's "Motion" or "§ 2255 Motion"). Dkt. No. 9. The Government has filed a "Memorandum in Response to § 2255" (hereinafter, the Government's "Response"). For the reasons set forth below, it is recommended that Hernandez's § 2255 Motion be **DISMISSED** with prejudice. It is further recommended that the Court **DECLINE** to issue a certificate of appealability.

## I. Jurisdiction

The Court has jurisdiction over Hernandez's Motion pursuant to 28 U.S.C. §§ 1331 and 2255.

## II. Procedural History

On November 12, 2015, a grand jury returned a single-count indictment charging Hernandez and eight others with conspiracy to transport and harbor undocumented aliens, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(I) and 1324(a)(1)(B)(i). *See United States of America v. Juan Ricardo Hernandez*, No. 1:15-CR-1010-01, Dkt. No. 1.[1]  On April 22, 2016, Hernandez appeared before the Court along with his court-appointed counsel Alfredo Padilla, and he entered a plea of guilty to the indictment pursuant to a written plea agreement.  *See* CR Dkt. Minute Entry dated Apr. 22, 2016.

On September 7, 2016, the Court accepted Hernandez's guilty plea and sentenced him to 51 months of imprisonment, a three-year term of supervised release, and a $100.00 special assessment.  CR Dkt. No. 372; *see also* CR Dkt. Minute Entry dated Sept. 7, 2016.  Judgment was entered on September 16, 2016.  CR. Dkt. No. 374.  Hernandez did not file a direct appeal.  Dkt. No. 9 at 2.

On April 27, 2017, Hernandez originally filed his "Petitioner's Motion to Correct Sentence Pursuant to Fed. R. Crim. P. Rule 52(b)," which the District Clerk construed and filed as a motion filed pursuant to 28 U.S.C. § 2255.  Dkt. No. 1.[2]  On July 5, 2017, Hernandez filed his instant timely "Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody."  Dkt. No. 9.[3]

---

[1] Hereinafter, citations to Hernandez's criminal case docket entries ("CR Dkt. Nos.") will be cited with "CR" followed by the docket entry number.  Otherwise, a docket entry citation refers to the civil docket for 1:17-cv-093.

[2] On May 5, 2017, the Court informed Hernandez that it would construe his filing as a § 2255 motion and the corresponding consequences.  Dkt. No. 5.  On June 1, 2017, Hernandez filed a "Motion to Clarify," stating that he did not wish his filing to be construed as a § 2255 motion. Dkt. No. 8.

[3] After filing his Motion to Clarify (Dkt. No. 8), Hernandez filed his instant motion seeking relief pursuant to 28 U.S.C. § 2255.

### III. Legal Standards

**A.    28 U.S.C. § 2255.**  Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside, or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or the laws of the United States, (2) the district court was without jurisdiction to impose the sentence, (3) the sentence imposed was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  If an error is not of constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

**B.    Ineffective Assistance of Counsel.**    The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them. *Missouri v. Frye*, 566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)).   "Critical stages" refers not only to trial, but also to pretrial proceedings—including the plea-bargaining process. *Laffler v. Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012); *see also Padilla v. Kentucky*, 559 U.S. 356, 373, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).  Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during sentencing is constitutionally impermissible. *Laffler*, 566 U.S., 165.

The constitutional standard for determining whether a criminal defendant has been denied effective assistance of counsel at any of the above-mentioned critical stages was announced by the Supreme Court in *Strickland v. Washington*. 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In that case, the Supreme Court established the following two-part test for evaluating ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. 668, 687 (1984).

To demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *See Williams v. Taylor*, 529 U.S. 362, 390−91 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Strickland*, 466 U.S. at 687−88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994). A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687−91; *Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1036 n.1 (5th Cir. 1998).

In reviewing counsel's performance, the Court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and must

"indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Any deficiencies in counsel's performance must be prejudicial to the defense to constitute ineffective assistance under the Constitution. *Id.* In order to establish that he sustained prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams*, 529 U.S. at 391; *Strickland*, 466 U.S. at 694; *see also Cantu v. Collins*, 967 F.2d 1006, 1016 (5th Cir. 1992).

If a defendant alleges ineffective assistance arising after a guilty plea, he must demonstrate a reasonable probability that, but for his attorney's errors, he would not have pleaded guilty and insisted on proceeding to trial. *Armstead v. Scott*, 37 F.3d 202, 211 (5th Cir. 1994). In assessing prejudice in the context of a guilty plea, the Court must consider the totality of the circumstances, "including: (1) the defendant's evidence to support his assertion that he would have gone to trial had he known [the relevant circumstances]; (2) his likelihood of success at trial; (3) the risks [he] would have faced at trial; (4) his representations about his desire to retract his plea; . . . . and (6) the district court's admonishments." *United States v. Shepherd*, 880 F.3d 734, 744 (5th Cir. 2018) (internal quotation marks and citation omitted).

Because a defendant alleging ineffective assistance must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or actual prejudice will ordinarily make it unnecessary to examine the other prong. *See Strickland*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d at 716, 721 (5th Cir. 1997).

Therefore, failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders moot the issue of prejudice. *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229-30 (5th Cir. 1987). It is also generally unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice. *See Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992); *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986).

## IV. Discussion

### A.    Ineffective Assistance of Counsel Claims

In his § 2255 Motion, Hernandez asserts various claims that his court-appointed counsel, Alfredo Padilla, provided him with ineffective assistance of counsel. *See* Dkt. No. 9 at 4, 6−7. In its Response, the Government requests that its "motion to dismiss should be granted and Hernandez's § 2255 motion denied without further proceedings." Dkt. No. 36 at 26. The heart of the Government's argument is that "Hernandez fails to satisfy his burden" of demonstrating ineffective assistance "under *Strickland*." *Id.* at 4. Hernandez has not replied to the Government's Response. For the reasons provided below, these claims lack merit and are subject to dismissal with prejudice.

### 1. *Hernandez's Claim That He Did Not Know He Had Signed A Plea Agreement Until Preparing His § 2255 Motion*

Hernandez avers that Padilla did not explain to him that he had signed a plea agreement in his criminal case. Dkt. No. 9 at 4. Relatedly, Hernandez claims that "he

did not know that he had signed a Plea Agreement until (in preparation of [his § 2255] filing) [he] obtained excerpts of" his PSR, which made reference to the plea agreement. *Id.*

On April 22, 2016, Hernandez appeared before the undersigned for a rearraignment hearing and was placed under oath. CR Dkt. Minute Entry dated Apr. 22, 2016. During the plea colloquy, the Court inquired as to the existence of a plea agreement between Hernandez and the Government. The Government confirmed the existence of a plea agreement and recited the terms on the record. CR Dkt. No. 392 at 18. After questioning by the Court, Hernandez repeatedly affirmed that he understood the terms of his plea agreement. *Id.* at 19. The Court also highlighted certain provisions of the plea agreement. *Id.* at 19−20. Hernandez also agreed that Padilla had previously explained the plea agreement "in detail and answer[ed] any questions [Hernandez] may have had regarding the document . . . before [he] signed it." *Id.* at 20. In addition, Hernandez identified his signature on the plea documents, confirming that he had signed them without coercion. *Id.* He agreed that he "want[ed] the Court to accept the terms of [his] plea agreement." *Id.* at 21. Considering the statements Hernandez made while under oath during his sentencing hearing, his claim that he was unaware he had signed a plea agreement until he filed his § 2255 Motion is wholly belied by the record.

Statements made to a court under oath are strongly presumed to be truthful. *Blackledge v. Allison*, 431 U.S. 63, 73−74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly

incredible." *Id.* at 74 (citing *Machibroda v. United States*, 368 U.S. 487, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962)). The Government asserts that this evidence demonstrates that Hernandez's claim lacks merit. Dkt. No. 36 at 9. Hernandez has not filed a reply to the Government's Response. Having failed to contradict the above-discussed evidence discussed with any facts or evidence of his own, Hernandez's claim is conclusory, refuted by the record, and subject to dismissal. *See Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations of deficient performance and prejudice do not satisfy *Strickland's* two-pronged test); *United States v. Fields*, 565 F.3d 290, 298 (5th Cir. 2009) ("If, on the record before us, 'we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary[.]'") (citing *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995)); *Sevim v. United States*, 16-CR-266-SS, 2018 WL 4762140, at *3 (W.D. Tex. Oct. 1, 2018) ("Conclusory allegations of ineffective assistance of counsel are insufficient to warrant an evidentiary hearing or to support relief pursuant to section 2255.") (citing *United States v. Demik*, 489 F.3d 644, 647 (5th Cir. 2007)).

### 2. *Hernandez's Claim That He Did Not Knowingly Decide To Plead Guilty*

Hernandez next contends that "Padilla did not read and/or explain the Plea Agreement to [him], such that a knowing decision to plea guilty could be made[.]" Dkt.

No. 9 at 6.  (errors in original)  He argues that, because of his lack of formal education, "any explanation of the proposed Plea Agreement . . . would have been not understood without reading aloud each sentence and answering questions regarding the meaning of such written sentence[.]"  *Id.* (errors in original).  Based on Padilla's alleged failure to take these actions, Hernandez argues that his Sixth Amendment right to counsel was violated.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'"  *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1991) (quoting *Brady v. United States*, 397 U.S. 742, 749, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)).  A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him."  *Bousley v. United States*, 523 U.S. 614, 618, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).  "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review."  *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

Here, Hernandez offers no evidence to support his conclusion that his plea was involuntary.  On the contrary, his admissions made under oath during rearraignment illustrate that he entered his guilty plea knowingly and voluntarily.  Hernandez stated that he had received a copy of the indictment, discussed the charges with Padilla, and did not have any lingering questions about the charges.  CR Dkt. No. 392 at 9−10. Even assuming, arguendo, that Hernandez was not fully informed of the charges against him prior to his rearraignment, this defect would have been cured when the

Court explained the charges contained in the indictment. *Id.* at 12−13.  Hernandez indicated he understood the charges against him prior to the Court taking his plea.  At his rearraignment, the Court also explained the consequences of pleading guilty and what rights Hernandez would have if he instead decided to go to trial. *Id.* at 14−18. Hernandez indicated that he understood. *Id.*  Hernandez provides no evidence now, other than his own, unsupported contention, that he did not understand the consequences of his guilty plea when he entered it.  Further, Hernandez repeatedly denied being coerced or forced to plead guilty. *Id.* at 20−21, 23−25.

Considering the foregoing exchanges with the Court, Hernandez's claim that he did not knowingly decide to plead guilty is conclusory, refuted by the record and subject to dismissal. *See Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations of deficient performance and prejudice do not satisfy *Strickland's* two-pronged test); *United States v. Fields*, 565 F.3d 290, 298 (5th Cir. 2009) ("If, on the record before us, 'we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary[.]'") (citing *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995)); *Sevim v. United States*, 16-CR-266-SS, 2018 WL 4762140, at *3 (W.D. Tex. Oct. 1, 2018) ("Conclusory allegations of ineffective assistance of counsel are insufficient to warrant an

evidentiary hearing or to support relief pursuant to section 2255.") (citing *United States v. Demik*, 489 F.3d 644, 647 (5th Cir. 2007)).

### 3. Hernandez's Claim That Padilla Did Not Explain His Possible Sentence Enhancements

Hernandez next argues that "Padilla failed to clearly articulate the possibility of his sentence being enhanced by several years of imprisonment due to relevant conduct findings" in the Presentence Investigation Report (hereinafter, the "PSR"). Dkt. No. 9 at 6. He contends that this failure constitutes ineffective assistance of counsel.

Through the plea agreement and again during the guilty plea colloquy at his rearraignment hearing, Hernandez was informed that he "could be sentenced for up to . . . 10 years and also be fined $250,000." CR Dkt. No. 392 at 14; *see also* CR Dkt. No. 276 at 2. The Court informed Hernandez that the sentencing judge would not "be able to determine what [his] actual sentencing range" would be under the "advisory sentencing guidelines" until after the presentence investigation was conducted, the PSR was prepared, both sides had an opportunity to object to the PSR, and both sides were given the chance argue their objections at the sentencing hearing. Dkt. No. 392 at 17. Hernandez indicated he understood this process. *Id.* At the time of the rearraignment, Hernandez was also told that the terms of the plea agreement were simply recommendations to the Court, and that the Court could impose "a sentence that could be higher or lower than" Hernandez expected. *Id.* at 21. Hernandez again stated he understood, and that he still wanted to proceed with his guilty plea. *Id.*

Even under a liberal interpretation of his § 2255 Motion, Hernandez does not state that if Padilla had explained all his possible sentence enhancements, then he

would have decided not to plead guilty and proceed to trial.  Instead, Hernandez merely implies that Padilla's deficient explanation regarding the possible sentencing enhancements allowed him to believe he would receive a lesser sentence.

However, a defendant's mere understanding that he would "receive a lesser sentence in exchange for a guilty plea will not abrogate the plea if a heavier sentence is imposed." *DeVille v. Whitley*, 21 F.3d 654, 658 (5th Cir. 1994); *see also United States v. Santa Lucia*, 991 F.2d 179, 180 (5th Cir. 1993) ("[R]eliance on the erroneous advice of counsel relative to the sentence likely to be imposed does not render a guilty plea unknowing or involuntary.  As long as the defendant understood the length of time he might possibly receive he was fully aware of his plea's consequences.").   Hernandez's claim lack merit and is subject to dismissal.

### 4.  *Hernandez's Claims That Padilla Failed To Object To Sentence Enhancements And Present Mitigating Evidence*

Hernandez raises multiple arguments that Padilla performed deficiently throughout the sentencing process, thereby violating Hernandez's Sixth Amendment rights.   Hernandez claims that Padilla failed to object to any of the following sentencing enhancements in the PSR: (1) a nine-point enhancement due to the over 100 undocumented of aliens found to be involved in the conspiracy, (2) a two-point enhancement because an unaccompanied minor was involved in the smuggling operation, (3) a two-point enhancement for the substantial risk of death or serious bodily injury created by the conspiracy, and (4) a three-point enhancement for Hernandez's managerial role.  Dkt. No. 9 at 6–7; *see also* CR Dkt. No. 336 at 22–23.

The allegation that Padilla failed to object to these sentencing enhancements is not supported by the record. At Hernandez's sentencing hearing on August 31, 2016, Padilla informed the Court that he had oral objections "concerning the criminal history and some relevant conduct aspect[s] of the [PSR]." Dkt. No. 393 at 2. However, the Government opposed the presentation of these objections because they had not been filed prior to the hearing. *Id.* at 4. The Court granted a short continuance to allow Padilla time to file the objections and the Government to file responses. Padilla's subsequent written objections to the PSR challenged three of the PSR's proposed sentencing enhancements and Hernandez's criminal history category calculation.[4] CR Dkt. No. 370. Padilla argued these objections at Hernandez's sentencing hearing on September 7, 2016. Dkt. No. 398 at 3–6 (addressing the criminal history calculation); 6–10 (addressing the quantity of aliens involved in the conspiracy); 14 (addressing the involvement of an unaccompanied minor alien); 14–15 (addressing the substantial risk of injury or harm enhancement). After argument by Padilla and the Government, the Court overruled each of these objections. *See* CR Dkt. Minute Entry dated Sept. 7, 2016.

Hernandez also contends that Padilla should have objected to the "managerial role" assessment, and that he should have presented mitigating "evidence to demonstrate that [his] role was that of a scout driving ahead of the transporting vehicle." Dkt. No. 9 at 7. Yet Hernandez does not provide a factual or legal basis on which Padilla could have made either of these arguments. While attorneys must

---

[4] Padilla objected to enhancements based on: the total number of undocumented aliens, the presence of an unaccompanied minor, and the determination that Hernandez had recklessly created a substantial risk of death or serious bodily injury. CR Dkt. No. 370.

advocate for their clients, "counsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Said another way, it is not objectively unreasonable or unprofessional for counsel to withhold meritless objections.

During the guilty plea colloquy, Hernandez admitted to "looking for like Border Patrol" for others who "were driving a loaded car," and blocking Border Patrol Vehicles "[s]o they would not pass through." CR Dkt. No. 392 at 30−33. He also acknowledged that others in the conspiracy used his name in connection with payment accounts, and that he knew the payments were made in exchange for transporting undocumented aliens. *Id.* at 31−32. Moreover, the record contains references from a variety of witnesses that Hernandez was considered the "lead scout" in the organization and served as the organizer's "right hand man." *See, e.g.*, CR Dkt. No. 336 at 11 (a co-conspirator "provided a statement in which he identified Juan Ricardo Hernandez as a lead scout driver for the . . . alien smuggling organization); 13 (stating that "Hernandez was also identified as [the organizer's] 'right hand' man"; that a co-conspirator "identified J. Hernandez as the lead scout driver and [the organizer's] second-in-command"; and that an additional co-conspirator "identified J. Hernandez as the scout leader for the organization"); 14 (a different co-conspirator stating she "considered J. Hernandez the lead scout driver"); 17 (describing a different individual as "the lead scout driver when J. Hernandez was unavailable"). Hernandez has produced no facts or evidence of his own to contradict this record evidence. Having failed to contradict the above-discussed evidence discussed with any facts or evidence of his own, Hernandez's claim is conclusory, refuted by the record, and subject to

dismissal. *See Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations of deficient performance and prejudice do not satisfy *Strickland's* two-pronged test); *United States v. Fields*, 565 F.3d 290, 298 (5th Cir. 2009) ("If, on the record before us, 'we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary[.]'") (citing *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995)); *Sevim v. United States*, 16-CR-266-SS, 2018 WL 4762140, at *3 (W.D. Tex. Oct. 1, 2018) ("Conclusory allegations of ineffective assistance of counsel are insufficient to warrant an evidentiary hearing or to support relief pursuant to section 2255.") (citing *United States v. Demik*, 489 F.3d 644, 647 (5th Cir. 2007)).

### B. Plain Error Claims

Construing his pro se pleadings liberally,[5] Hernandez also makes two plain error claims in addition to his ineffective assistance claims.[6]

---

[5] *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) ("[A] pro se document is to be liberally construed."); *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam) (stating that pro se pleadings are held "to less stringent standards than formal pleadings drafted by lawyers"). However, a pro se petitioner's "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (citing *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983)).

[6] These claims have been re-organized and numbered for clarity. The Court here notes that these claims were not reiterated in Hernandez's most recent § 2255 Motion, but nevertheless addresses them here for the sake of completeness.

**1. *Hernandez's Claim That The Court Plainly Erred By Enhancing His Sentence Pursuant To U.S.S.G. § 2L1.1(b)(6)***

Hernandez objects to the use of § 2L1.1(b)(6) on grounds that it "contains the very same language as that of the **Residual Clause** which is found in **§ 4B1.2(a).**" Dkt. No. 1 at 3 (emphasis in original). The application of § 2L1.1(b)(6) resulted in a two-point increase in Hernandez's total offense level because the offense "involve[d] intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." U.S. SENTENCING GUIDELINES MANUAL, § 2L1.1(b)(6) (U.S. SENTENCING COMM'N 2015). Hernandez argues that § 4B1.2(a)'s residual clause "has been deemed unconstitutional on its face," and that the language of § 2L1.1(b)(6) contains "the very same language" as § 4B1.2(a).[7]

In *Beckles v. United States*, 137 S. Ct. 886 (2017), the Supreme Court addressed—and rejected—the same argument that Hernandez makes here. In that case, the Court held that "[t]he residual clause in § 4B1.2(a)(2) . . . is not void for vagueness." *Beckles*, 137 S. Ct. at 892. The Court reasoned that void-for-vagueness challenges do not apply to the Guidelines, explaining that "the Court has invalidated two kinds of criminal laws as 'void for vagueness': laws that *define* criminal offenses and laws that *fix the permissible sentences* for criminal sentences." *Id.* (emphasis in original). After noting that the Guidelines fall into the latter category, the Court

---

[7] The Court makes note that these two Guideline provisions do not contain identical language. *Compare* U.S. SENTENCING GUIDELINES MANUAL, § 2L1.1(b)(6) (U.S. SENTENCING COMM'N 2015) ("If the offense involved *intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person*, increase by 2 levels, but if the resulting offense level is less than level 18, increase to level 18.") (emphasis added), *with* U.S. SENTENCING GUIDELINES MANUAL, § 4B1.2(a)(2) (U.S. SENTENCING COMM'N 2015) ("The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.") (emphasis added).

16/20

stated that "the advisory Guidelines do not fix the permissible range of sentences.  To the contrary, they merely *guide the exercise of a court's discretion* in choosing an appropriate sentence within the statutory range."  *Id.* (emphasis added).  In other words, because the Sentencing Guidelines do not bind courts, "they are not subject to a vagueness challenge under the Due Process Clause."  *Id.*    For the foregoing reasons, Hernandez's claims lack merit and is subject to dismissal.

### 2. *Hernandez's Claim That The Court Plainly Erred By Delegating Too Much Control To Probation Officers*

Hernandez contends that the Court plainly erred by allowing the Probation Officer "to exponentially alter the sentence," and that in so doing, "the Probation Officer was allowed to usurp the power of the Honorable court, and to force upon [Hernandez] an enhancement that was wholly and fully inappropriate."  Dkt. No. 1 at 3–4.

Probation officers have the authority to conduct presentence investigations and submit their findings to the Court.  *See* 18 U.S.C. § 3552.  Their investigations and reports include a total offense level calculation and a corresponding sentencing range pursuant to the United States Sentencing Guidelines (hereinafter, the "Sentencing Guidelines").  But, as indicated above, the Sentencing Guidelines are not binding on courts.  *See United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).  Instead, "sentencing decisions are anchored by the Guidelines," and serve as "a meaningful benchmark through the process of appellate review."  *Peugh v. United States*, 569 U.S. 530, 541, 133 S. Ct. 2072, 186 L. Ed. 2d 84 (2013) (referencing *Kimbrough v. United States*, 552 U.S. 85, 107 (2007)).   Irrespective of the

recommendation contained in the PSR, judges retain broad sentencing discretion.  *See United States v. Hayes*, 589 F.2d 811, 826−27 (5th Cir. 1979); *United States v. Garcia*, 617 F.2d 1176 (5th Cir. 1980).

Notwithstanding the multiple allegations of purported ineffective assistance of counsel alleged by Hernandez in his § 22555 Motion, these allegations do not rise to the level of deficient performance required for a claim under *Strickland*.  In other words, Hernandez has not overcome the strong presumption that Padilla's conduct fell within the wide range of reasonable professional assistance.  Alternatively, even if some of Padilla's alleged errors were unprofessional and unreasonable, Hernandez has not shown that he was prejudiced and that but for these errors, he would have instead proceeded to trial.  Because Hernandez has failed to meet both prongs of *Strickland*, and because he has not otherwise shown he is entitled to relief on grounds of plain error, his § 2255 Motion should be dismissed.

### V. Evidentiary Hearing

A § 2255 motion may be dismissed without a hearing if the motion, files, and records of the case conclusively show that the Movant is not entitled to relief. 28 U.S.C. § 2255(b); *see also United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam). The claims contained in Hernandez's § 2255 Motion are unsupported and belied by the record.  Therefore, no evidentiary hearing is proper, and his claims should be dismissed with prejudice.  *See Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994) ("The district court need not hold an evidentiary hearing to resolve ineffective assistance claims where the petitioner has failed to allege facts which, if

proved, would admit of relief or where the [court's] record suffices for their disposition.") (citations omitted); *Fields*, 565 F.3d 290, 298 ("If, on the record before us, 'we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary[.]'") (citing *Walker*, 68 F.3d 931, 934).

## VI. Certificate of Appealability

A certificate of appealability shall not issue unless the movant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the [§ 2255 Motion] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (internal quotations and citations omitted).  Said differently, where claims have been dismissed on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484.  Where claims have been dismissed on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the [motion] states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th

Cir. 2000). A certificate of appealability should not issue in this case because Hernandez has not made a substantial showing of the denial of a constitutional right.

## VII. Recommendation

It is recommended that Hernandez's § 2255 Motion be **DISMISSED** with prejudice. It is further recommended that the Court **DECLINE** to issue a certificate of appealability.

## VIII. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** on this 19th day of October, 2018.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**